IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-118-D

| | |
|---|---|
| PAUL PFEIFER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| BRRRT PROPERTIES, LLC, et al., ) | |
| ) | |
| Appellees. ) | |

Paul Pfeifer ("Pfeifer" or "appellant") appeals the bankruptcy court's pretrial order denying his motion to dismiss an adversary proceeding and post-trial order denying the dischargeability of a $235,174 debt that Pfeifer owes to BRRRT Properties, LLC, Bradley Sizemore, and Rosemary Sizemore ("Sizemore"). See [D.E. 1]; cf. [D.E. 1-1] (pretrial order); [D.E. 1-2] (post-trial order); see also In re Pfeifer, No. 18-05399-5-SWH, 2021 WL 2492847 (Bankr. E.D.N.C. June 17, 2021) (unpublished). After a bench trial, the bankruptcy court held that Pfeifer's $235,174 debt was not dischargeable under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4). As explained below, the court concludes that the debt is not dischargeable under 11 U.S.C. § 523(a)(4) because of Pfeifer's embezzlement; therefore, the court declines to address whether the debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A) and affirms.

I.

The dispute arises from a failed property-flipping arrangement between Pfeifer and Sizemore that began in late 2013 and ended in late 2015. On appeal, the dispute concerns 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4) and a $235,174 debt that the bankruptcy court declined to discharge.

At trial, the evidence focused on six parcels of real property in Wilmington, North Carolina. See [D.E. 1-2] 6. Sizemore and Pfeifer entered into one written joint venture agreement concerning the first property on Dean Drive and then proceeded without the benefit of a new written agreement on the other five pieces of real property. See id. at 6 n.2. Under the agreement, Pfeifer hoped to locate properties to purchase, quickly renovate the properties, and sell the properties for profit. Id. at 7. Pfeifer would buy the properties and provide Sizemore the opportunity to pay half the properties' investment and renovation costs. Id. After selling the property, each party was to recoup his investment and then share the net profits 60/40, with Pfeifer receiving the larger share. Id.

Pfeifer acquired the first property at 4621 Dean Drive for approximately $98,000, and that property became the subject of the parties' written joint venture agreement of December 11, 2013. Id. The first transaction worked well. Sizemore invested $68,906.96. After the property sold, Sizemore received the $68,906.96 he invested and $19,442.50 in profits. See id.

On April 2, 2014, Sizemore invested $165,272.95 with Pfeifer. Sizemore intended the funds to apply to 50% of the acquisition costs of 6243 Turtle Hall, at a cost of $250,000, and 317 Scottsdale Drive, at a cost of $79,000. See id. At trial, the bankruptcy court found that Sizemore credibly testified that "he presented the check to Pfeifer based on Pfeifer's representation that he already had purchased the properties at those prices, and after Sizemore walked through the Turtle Hall property with Pfeifer, where construction work was underway and Pfeifer discussed the improvements to be made." Id. "However, at that time, Pfeifer had not purchased and did not own Turtle Hall." Id. At trial, Pfeifer testified that he intended to purchase the Turtle Hall property but was outbid. See id. at 7–8. Pfeifer did not correct his false representation to Sizemore. See id. at 8. Instead, Pfeifer doubled down on his fraud by reinforcing Sizemore's belief about the Turtle Hall property "by purchasing builder's insurance on that property, falsifying a HUD-1 purporting to show

2

[Pfeifer's] acquisition of it for cash, falsifying a deed of trust to show ownership, and preparing a fictitious contract to sell the property." Id. "Pfeifer and his entities did purchase, insure, and renovate the Scottsdale Drive property." Id.

"On September 26, 2014, [Sizemore] invested an additional $228,500 in the venture, with that amount representing [Sizemore's] 50% share of the total acquisition costs of three properties: 242 Central Boulevard ($60,000), 402 Pierpoint Drive ($250,000), and 5016 Clear Run Drive ($129,000)." Id. (footnote omitted). The bankruptcy court found that "Sizemore testified credibly that Pfeifer represented that he already had purchased 402 Pierpoint [Drive], and walked Sizemore through the property prior to Sizemore providing that payment." Id. "In fact, Pfeifer had not purchased and did not own 402 Pierpoint Drive." Id. "Pfeifer testified that as with Turtle Hall, he intended to purchase the property, but was outbid by another buyer." Id. (emphasis omitted). As with the Turtle Hall property, instead of being honest with Sizemore, Pfeifer doubled down on his fraud. Id. Specifically, Pfeifer perpetuated Sizemore's belief that Pfeifer owned the 402 Pierpoint Drive property and was renovating it "as part of the venture with [Sizemore], by purchasing builder's insurance and subsequently falsifying and presenting to Sizemore a HUD-1 purporting to show acquisition of the property and a deed of trust to show ownership." Id. "Pfeifer and his entities did purchase, insure, and renovate the Central Boulevard and Clear Run Drive properties." Id.

On June 4, 2015, Sizemore provided Pfeifer "two additional checks totaling $70,000, with that amount to be applied to ongoing renovation costs." Id. at 9. The bankruptcy court found that Sizemore's evidence "did not show precisely how these funds were (or were not) allocated." Id. This lack of specificity comported with "the fluid nature of the parties' business arrangement, which was a loose agreement whereby profit from sales and/or unspent investment funds could be 'carried over' or reallocated from one property to another with little discussion between the parties." Id.

3

On June 17, 2021, the bankruptcy court entered a comprehensive order. See [D.E. 1-2]. The bankruptcy court concluded that Pfeifer's debt of $235,174 was nondischargeable under 11 U.S.C. § 523(a)(2)(A) and, alternatively, nondischargeable under 11 U.S.C. § 523(a)(4). See id.

II.

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees." In bankruptcy proceedings, "the concept of finality is more flexibly applied than with regard to district court judgments." Brandt v. Wand Partners, 242 F.3d 6, 13 (1st Cir. 2001); see Mort Ranta v. Gorman, 721 F.3d 241, 246 (4th Cir. 2013); McDow v. Dudley, 662 F.3d 284, 287 (4th Cir. 2011); In re Comput. Learning Ctrs., Inc., 407 F.3d 656, 660 (4th Cir. 2005); A.H. Robins v. Piccinin, 788 F.2d 994, 1009 (4th Cir. 1986). No uniform rule, however, has developed to determine when an order or judgment is final. See Brandt, 242 F.3d at 13. An order "which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of 28 U.S.C. § 158." In re Kitty Hawk, Inc., 204 F. App'x 341, 343 (5th Cir. 2006) (per curiam) (unpublished) (alteration and quotation omitted); see Mort Ranta, 721 F.3d at 246; McDow, 662 F.3d at 287; In re Comput. Learning Ctrs., Inc., 407 F.3d at 660.

The court has jurisdiction over this appeal. In a bankruptcy appeal, a district court reviews a bankruptcy court's legal determinations de novo and its factual findings for clear error. See In re White, 487 F.3d 199, 204 (4th Cir. 2007); In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc., 453 F.3d 225, 231 (4th Cir. 2006); Schlossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004). In doing so, the court may consider the original papers and exhibits, the transcript of proceedings, and the docket. See Fed. R. App. P. 10(a); Union Bank v. Blum, 460 F.2d 197, 202 (9th Cir. 1972); Arcari v. Marder, 225 B.R. 253, 256 (D. Mass. 1998); In re Bartlett, 92 B.R. 142, 143 (E.D.N.C. 1988).

"Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." Central Va. Cmty. Coll. v. Katz, 546 U.S. 356, 363–64 (2006) (quotation omitted); see Lamar, Archer & Cofrin, LLP v. Appling, 138 S. Ct. 1752, 1758 (2018); Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). The "fresh start" affords a debtor the opportunity, inter alia, to "enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Grogan v. Garner, 498 U.S. 279, 286 (1991) (quotation omitted); see Hunt, 292 U.S. at 244. Accordingly, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995) (quotation omitted).

In the bankruptcy court, Sizemore established the debt of $235,174, and Pfeifer does not contest that debt on appeal. See [D.E. 1-2] 5–6. Rather, Pfeifer contests the bankruptcy court's nondischargeability holding. See [D.E. 18, 22].

Sizemore must establish an exception to discharge by a preponderance of the evidence. Grogan, 498 U.S. at 287–88, 291; Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994). A court limits nondischargeability provisions "to those plainly expressed" in the statutory text. Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (quotation omitted).

Section 523(a)(4) provides no discharge "from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (emphasis added). For an action to constitute "embezzlement" under section 523(a)(4), the creditor must show: "(i) the creditor entrusted money or property to the debtor; (ii) the debtor appropriated the money or property

5

for a use other than that for which it was entrusted; and (iii) the circumstances indicate a fraudulent intent." In re Sorge, 566 B.R. 369, 381 (E.D.N.C. 2017); see Bullock v. BankChampaign, N.A., 569 U.S. 267, 273 (2013); In re Piercy, 21 F.4th 909, 919 (6th Cir. 2021); In re Deitz, 760 F.3d 1038, 1039, 1042, 1051–52 (9th Cir. 2014); In re Sherman, 603 F.3d 11, 14 (1st Cir. 2010); In re Bucci, 493 F.3d 635, 644 (6th Cir. 2007); In re Miller, 156 F.3d 598, 602–03 (5th Cir. 1998); In re Brady, 101 F.3d 1165, 1172–73 (6th Cir. 1996); In re Littleton, 942 F.2d 551, 555–56 (9th Cir. 1991); In re Wallace, 840 F.2d 762, 765 (10th Cir. 1988).

As the bankruptcy court found, Sizemore proved by a preponderance of the evidence that "Pfeifer sought and received [Sizemore's] funds by representing that he would invest those funds for a specific and agreed-upon purpose, which was to share the purchase and renovation costs of specific parcels of real estate." [D.E. 1-2] 11. "Instead, Pfeifer diverted a portion of those funds to other uses without [Sizemore's] knowledge or agreement, causing injury to [Sizemore]." Id. The bankruptcy court properly rejected Pfeifer's contention that he merely acquired different parcels of real property than the parcels he told Sizemore he acquired. Id. Rather, Pfeifer's conduct of using the money Sizemore entrusted to him on real property other than the Turtle Hall property and the Pierpoint Drive property and his fraudulent intent constitutes embezzlement. See id. Pfeifer's extensive fraudulent conduct about the Turtle Hall property and the Pierpoint Drive property after his fraudulent misrepresentations helped to perpetuate Sizemore's continued reliance on Pfeifer's fraudulent misrepresentations and bolsters the bankruptcy court's finding that Pfeifer embezzled the funds that Sizemore entrusted to him. See id.

In opposition, Pfeifer argues that embezzlement under section 523(a)(4) is "the deliberate taking or retaining of the . . . property of another with the intent to deprive the owner of its use or benefit." United States v. Smith, 373 F.3d 561, 564 (4th Cir. 2004) (per curiam). Pfeifer then argues

that no evidence supports a finding that Pfeifer intended to deprive Sizemore "of his investment in their joint venture" and cites Pfeifer's investments in pieces of real property other than the Turtle Hall and Pierpoint Drive properties. [D.E. 18] 12.

The court rejects Pfeifer's argument. The evidence established that Sizemore's investment on part of the joint venture was an investment, inter alia, in the Turtle Hall property and the Pierpoint Drive property, but Pfeifer embezzled the funds that Sizemore invested for those two properties and Pfeifer spent the money elsewhere. Each piece of real property (including the Turtle Hall property and the Pierpoint Drive property) is unique, and Pfeifer specifically intended to deprive Sizemore of an investment in those two pieces of real property. Like many embezzlers, Pfeifer claims that he always intended to return the money he embezzled. However, Pfeifer's hope to use the embezzled funds to buy other properties and later repay Sizemore is no defense. See, e.g., In re Sherman, 603 F.3d at 14; In re Brady, 101 F.3d at 1172–73. Hope is a wonderful virtue. Hope is not a defense to embezzlement.

The court affirms the bankruptcy court's conclusion that Pfeifer's $235,174 debt is not dischargeable under 11 U.S.C. § 523(a)(4). In light of this conclusion, the court need not analyze the parties' arguments about 11 U.S.C. § 523(a)(2)(A). Cf. Appling, 138 S. Ct. at 1758–63; Engler v. Van Steinburg, 744 F.2d 1060, 1060–61 (4th Cir. 1984).

III.

In sum, the court AFFIRMS the bankruptcy court's judgment. The clerk shall close the case.

SO ORDERED. This 12 day of July, 2022.

JAMES C. DEVER III
United States District Judge